# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SUSAN JENNINGS, et al.,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**OFFICER WILLIAM BORST, et al.,**<br><br>*Defendants.* | Case No. 5:18-cv-05624-JDW |

## MEMORANDUM

In this civil rights action, Plaintiffs allege that they suffered injuries at the hands of two police officers that the Borough of Slatington employed. They bring claims against the officers, their supervisors, and the Borough. Defendants ask the Court to dismiss the entire case for failure to state a claim. For the reasons that follow, the Court concludes that Plaintiffs have not pled viable claims against the supervisors or the Borough. The Court also concludes they have not pled and cannot, as a matter of law, plead claims for violation of the Pennsylvania Constitution. However, the Court concludes that Plaintiffs have adequately pled their remaining claims.

## I. FACTUAL BACKGROUND

### A. The Arrests

On January 2, 2017, Donald Jennings, Susan Jennings, and their twin sons Jonathan and Andrew Jennings were in their family home at 141 Center Street, Slatington, Pennsylvania. Shortly after 8 p.m., the family heard banging at the front door as someone screamed, "Police! Police." (ECF No. ¶¶ 10, 13.) Susan opened the door, Donald and Andrew were just behind her, and Jonathan was standing in the living room. (*Id.* ¶ 14.) When Susan asked the purpose of the officers' visit, Officer William Borst said something to the effect of, "We're here for him." (*Id.* ¶

15). At that time, the officers had not secured a search warrant for the home or an arrest warrant for any member of the Jennings family. (*Id.* ¶ 29.)

Andrew twice asked if the officers had a warrant. In response, Officer Borst entered the house and pushed Susan against the wall, causing her to fall over. (*Id.*) Officer Borst grabbed Andrew by his shirt, pulled him through the vestibule, and told him, "Stand up straight." (*Id.* ¶ 16.) Andrew explained that he could not stand up because he had stitches on his foot. (*Id.* ¶ 17.)

Officer Borst dragged Andrew onto the porch, told him that he was under arrest, and threw him against the wall. (*Id.* ¶¶ 18-19.) Andrew slumped to the ground, supported by a bent knee and one foot. (*Id.*) Officer Borst then threatened to taser Andrew and kicked him, causing him to fall. (*Id.* ¶ 20.) While Andrew was on the floor, Officer Borst again kicked him, put his knee on Andrew's back, twisted Andrew's arms behind his back, and placed handcuffs on him. (*Id.* ¶ 21.) Officer Borst then pulled Andrew to his feet. (*Id.*) When Andrew asked what he had done and suggested Officer Borst did not know which twin he was, Officer Borst replied, "Yeah I know who you are–you're the one that likes to hit women." (*Id.* ¶ 22.) Andrew indicated that he did not know what Officer Borst was referencing. (*Id.*)

Given that Andrew and Jonathan are twins, Officer Borst might have misidentified Andrew as Jonathan, who was allegedly the subject of a verbal complaint made by his wife. (*Id.* ¶ 23.) While Officer Borst was arresting Andrew, Officer (now Sgt.) Deron Dorward entered the Jennings' house, searched it, located Jonathan in the living room, and detained him. (*Id.* ¶ 24.) Officer Dorward grabbed Jonathan's right arm and put it in a "chicken wing" behind his back. (*Id.*) Officer Dorward then pushed Jonathan forward onto the living room couch face first and

cuffed both of Jonathan's wrists together. (*Id.* ¶ 27.) Officers Borst and Dorward then dragged both Andrew and Jonathan to a patrol car located on an adjacent street. (*Id.* ¶ 31.)

Susan followed the officers to the door and asked where they were taking her sons. (*Id.* ¶ 32.) One of the officers replied that if Susan did not get back in the house, they were going to arrest her too. (*Id.*) Donald walked down the steps and asked, "What are they being charged with and where are you taking them?" (*Id.* ¶ 33.) Officer Borst replied, "Lehigh County Prison." (*Id.*) When Donald inquired as to the specific charges, Officer Borst yelled at Donald to get back in the house and chased Donald up into his home. (*Id.*)

### B. Charges And Incarceration

The officers took Jonathan and Andrew to the Slatington Police Department, where Jonathan was placed in a cell and Andrew was handcuffed to the bar. (*Id.* ¶ 34.) Officer Borst filled out sworn Affidavits of Probable Cause and Criminal Complaints against both. (*Id.* ¶ 35.) The Complaint against Jonathan included charges for simple assault/physical, disorderly conduct, obstructing administration of law, resisting arrest, and harassment/physical contact. (*Id.* ¶ 36.) The Complaint against Andrew included charges for obstructing administration of law, resisting arrest, and disorderly conduct. (*Id.* ¶ 37, 38.) Plaintiffs allege that Officer Borst's Affidavits of Probable Cause were false. (*Id.*) Andrew and Jonathan were transported to Lehigh County Central Booking and processing where they were arraigned by video. (*Id.* ¶ 39.) Based on Officer Borst's recommendation, bail was set in the amount of $15,000 for Andrew and $25,000 for Jonathan. (*Id.* ¶ 39.) On January 4, 2017, Officer Borst also swore out Citations for disorderly conduct against

Donald and Susan Jennings for the events that took place on January 2, 2017. Plaintiffs allege that those citations were also false. (*Id.* ¶¶ 43-46.)

A preliminary hearing was scheduled on February 17, 2017. At that time, Officer Borst agreed to withdraw the charges of obstruction, resisting arrest and simple assault against Andrew and Jonathan and to dismiss the remaining charges of disorderly conduct and harassment by way of Accelerated Rehabilitation Disposition ("ARD"). (*Id.* ¶ 48.) Susan and Donald Jennings, on the other hand, insisted upon proceeding with their hearing that day. At that point, Officer Borst threatened to bring additional misdemeanor charges for disorderly conduct if Susan and Donald Jennings contested their summary citations. (*Id.* ¶ 49, 50.) After Susan and Jonathan continued to insist upon proceeding with the hearing, Officer Borst withdrew the criminal charges brought against them. (*Id.* ¶ 51, 52.)

### C.  Procedural History

On December 31, 2018, Plaintiffs filed a Complaint against Officer Borst, Sgt. Dorward, police Chief David Rachman, the Borough of Slatington ("Borough"), and Slatington Borough Council. (ECF No. 1.) On March 8, 2019, Defendants filed a motion to dismiss. (ECF No. 6.)

## II.  LEGAL STANDARD

A district court may dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability

requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* (quoting *Twombly*, 550 U.S. at 556-57).

In determining whether a Complaint is sufficient, the court must "accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, the Court must disregard "rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *Id.* (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012)); *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017).

### III. ANALYSIS

#### A. Federal Rule Of Civil Procedure 8(a)(2)

Defendants move to dismiss the Complaint because it is "overly verbose and redundant" in violation of Federal Rule of Civil Procedure 8(a)(2). (ECF No. 6 at 4.) In support of their argument, Defendants emphasize that the Complaint consists of 233 paragraphs, spread over 70 pages. However, the Court does not perceive Plaintiffs' Complaint as unduly long, especially given the complexity of the case. Indeed, the case is comprised of fourteen counts and involves multiple parties. Thus, the Complaint includes a "Pre-Discovery Factual Allegations" section, which lays out the relevant facts that form a distinct narrative upon which Plaintiffs base their claims. Additionally, of the 226 paragraphs contained in the Complaint, 140 of them detail the counts that Plaintiffs bring against Defendants. These paragraphs are not redundant but are

necessary to establish Plaintiffs' causes of action. Accordingly, the Court declines to dismiss the case on the basis that its length is unwarranted.

### B. Qualified Immunity

In their motion to dismiss, Defendants seek to dismiss Plaintiffs' Section 1983 claims against Officer Borst, Sgt. Dorward, and Chief Rachman for unlawful seizure/false arrest (Count I); false imprisonment and/or detention (Count II); unlawful search (Count V); failure to intervene (Count VI); and supervisory liability-policy making liability against Chief Rachman (Count IX) on grounds of qualified immunity. The doctrine of qualified immunity insulates government officials who are performing discretionary functions from liability for civil damages. *See James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To assess whether a government official's conduct is entitled to qualified immunity, a court must first determine if, assuming the facts alleged in the Complaint are true, Defendant's conduct violated a constitutional or statutory right; and, if so, whether the right at issue was clearly established when the conduct took place. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Qualified immunity is an affirmative defense for which the defendants bear the burden of proof. *See Brown v. Cwynar*, 484 F. App'x 676, 680 (3d Cir. 2012).

Here, Defendants do not argue that any rights at issue were not clearly established. Instead, they argue only that the Complaint does not allege a violation of a constitutional or statutory right. The problem, however, is that Defendants do not provide any analysis to support their argument. They do not highlight particular claims against them and analyze the pleadings nor do they conduct any of the other analysis necessary to establish qualified immunity. Instead, they just use the

phrase "qualified immunity" and cross their fingers in the hopes that the Court will dismiss the claims against them.

"Qualified immunity" is not a talismanic phrase that relieves Defendants of their burden to show that their actions did not violate Plaintiffs' clearly established constitutional rights. Defendants' motion to dismiss fails to grapple with any of the facts alleged in the Complaint and thus does little to convince the Court that Defendants have satisfied their burden of establishing qualified immunity. Moreover, the Court disagrees with Defendants' characterization of the Complaint, which contains numerous allegations that, if proven, could amount to violations of Plaintiffs' constitutional rights. The Court will therefore deny Defendants' motion to dismiss Plaintiffs' causes of action against the individual Defendants on the basis of qualified immunity.

Of particular note, Defendants point out that Andrew and Jonathan Jennings agreed to ARD with respect to the charges of disorderly conduct and harassment and argue that ARD does not constitute a resolution of the matter in Andrew's and Jonathan's favor. The Court understands Defendants to be arguing that, under *Heck v. Humphrey*, Plaintiffs would be barred from bringing claims under Section 1983 arising out of those charges. *See Heck v. Humphrey*, 512 U.S. 477 (1994). More specifically, *Heck* established that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005). The Third Circuit has held that ARD is not a favorable termination under *Heck*. *See Id.* Therefore, *Heck* bars parties from invoking Section 1983 to challenge charges that were resolved through ARD. At this stage, it is not clear to the Court whether Plaintiffs' false arrest and false imprisonment claims call into question the criminal ARD disposition. If so, *Heck* would bar those

7

claims. However, at this early stage of the litigation, the Court cannot conclude that *Heck* bars any claim here.

C. **Supervisory Liability Claim**

In Count IX of the Complaint, Plaintiffs assert claims of supervisory liability against the Borough, Borough Council, and Chief Rachman. To state a claim for supervisory liability, a plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Additionally, to establish a claim for supervisory liability, Fed.R.Civ.P. 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief" that rises "above the speculative level." *McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009) (citing *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

The Complaint does not martial any facts to show that anyone failed to employ a specific supervisory practice or custom, nor does it provide facts to indicate that anyone was aware of and indifferent to the risk created by the absence of such a practice or custom. Instead, the Complaint states only in conclusory terms that the officers' violations resulted from Chief Rachman's failure to employ a specific supervisory practice or custom. Because Plaintiffs do not make out a plausible

8

claim for supervisory liability pursuant to Fed.R.Civ.P. 8(a)(2), the Court will grant Defendants' motion and dismiss it.

   D.   *Monell* **Claim**

In Count X, Plaintiffs assert a claim against the Borough for municipal liability. A municipality can be liable only if an alleged constitutional transgression "implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996)); *Monell v. Dep't of Social Servs. New York City*, 436 U.S. 658 (1978). A government policy or custom can be established in two ways: Policy is made when a decisionmaker, who possesses final authority to establish a municipal policy with respect to the action, issues an official proclamation, policy, or edict. *See McTernan*, 564 F.3d at 657 (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). Custom, on the other hand, requires a showing that the practice of state officials in question, though not authorized by law, is so permanent and well-settled as to virtually constitute law. *See Id.* Custom requires proof of knowledge and acquiescence by the decisionmaker. *See Watson v. Abington Twp.*, 478 F.3d 144, 154 (3d Cir.2007); *Beck*, 89 F.3d at 971.

Plaintiffs allege in their pleadings that the Borough either failed to develop policies or developed and maintained policies and customs that caused the underlying violations of Plaintiffs' constitutional rights. More specifically, Plaintiffs insist that the Borough tolerated and ratified, among other things, the unreasonable use of force by police officers and the improper exercise of police powers. Additionally, Plaintiffs maintain that the Borough failed to develop policies regarding, among other things, 1) the monitoring of officers suffering from emotional, psychological, or drug dependent problems, 2) the sanctioning of officers who were the subject of

prior lawsuits or who violated the Constitutional rights of citizens, and 3) the screening of officers during the hiring process.

Nevertheless, Plaintiffs offer minimal, if any, factual support that such policies and customs exist or how those policies or customs, if true, caused their injuries. Moreover, Plaintiffs' allegations are too broad and do not define a policy or custom that relates directly to the conduct at issue. These pleading deficiencies are fatal to Plaintiffs' *Monell* claim. *See McTernan*, 564 F.3d at 658 (a claimant "must identify a custom or policy, and specify what exactly that custom or policy was"). Simply put, the factual allegations contained in the Complaint are insufficient to raise "a right to relief above the speculative level" under Fed.R.Civ.P. 8(a)(2), *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008), or satisfy the "rigorous standards of culpability and causation" required for municipal liability. *McTernan*, 564 F.3d at 658 (quoting *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405, (1997)). Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' *Monell* claim, without prejudice, to be repled within fourteen days if Plaintiffs have sufficient factual support. The Court will also dismiss Plaintiffs' claims against the police officers, the Borough Council, and each member of the Borough Council in their official capacity, as they are coextensive with Plaintiffs' *Monell* claims against the Borough. *See Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming dismissal of claims against police officers in official capacity as redundant of surviving claims against township).

**E.     State Law Claims**

In Counts XI through XIV, Plaintiffs assert state law claims for assault and battery, trespass, civil conspiracy, and constitutional violations against Officers Borst and Sgt. Dorward. Defendants contend that all state actions should be dismissed based on governmental immunity.

10

Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") provides that political subdivisions and their employees are immune against civil damage actions, except as provided for under the PSTCA itself. 42 Pa.C.S.A. §§ 8541 *et seq*. However, under the PSTCA, an agency employee is not afforded immunity from suit if his conduct constituted a "crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S.A § 8550. Willful misconduct is "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (1994) (citing *Evans v. Philadelphia Transportation Company*, 212 A.2d 440 (1965)). In other words, "willful misconduct" requires evidence that defendants "actually knew that their conduct was illegal." *Sameric Corp. of Delaware v. City of Philadelphia*, 142 F.3d 582, 600–01 (3d Cir. 1998). With this framework in mind, the Court considers each of the state law claims against Officer Borst and Sgt. Dorward.

1. **Assault and battery**

Under Pennsylvania law, police officers may be liable for assault and battery when their use of force is unnecessary or excessive. *See Bornstad ex rel. Estate of Bornstad v. Honey Brook Twp.*, Civ. A. No. 03–3822, 2005 WL 2212359, at *22 (E.D.Pa. Sept. 9, 2005). Therefore, in order to establish that police officers acted with willful misconduct in the context of an assault and battery, Plaintiffs must show that the officers intentionally used excessive force. *Johnson v. City of Philadelphia*, 105 F. Supp. 3d 474, 482 (E.D. Pa. 2015), *aff'd*, 837 F.3d 343 (3d Cir. 2016) (citing *Lucas v. City of Philadelphia*, No. 1778 C.D. 2011, 2012 WL 8691954 (Pa.Commw.Ct. June 6, 2012).

The facts alleged in the Complaint state a claim for the intentional use of excessive force. According to the Complaint, the officers used substantial force against Andrew and Jonathan

11

Jennings when neither of them was resisting the officers or otherwise posing a threat to the officers. In addition, Officer Borst pushed Susan Jennings when he entered the house. These facts are sufficient to permit the claims to move forward, and discovery will reveal whether the Complaint accurately recites them.

### 2. Trespass

A claim for trespass under Pennsylvania law requires a showing that "someone intentionally entered [the] land in the possession of another without a privilege to do so." *Klein v. Madison*, 374 F. Supp. 3d 389, 431 (E.D.Pa. 2019); *Kopka v. Bell Tel. Co. of Pa.*, 91 A.2d 232, 235 (1952) (quoting Restatement of Torts § 163); *see also Woodham v. Dubas*, 256 F. App'x 571, 576 (3d Cir. 2007) (per curiam) (holding jury's determination that officer entered property with permission precluded trespass verdict). In order to establish that his entry was privileged and therefore lawful, a police officer must show that he had a warrant, the owner consented, or there were exigent circumstances. *Klein v. Madison*, 374 F. Supp. 3d 389, 432 (E.D.Pa. 2019). Here, the Complaint alleges that the officers lacked a warrant and did not have permission when they entered the Jennings' home. Moreover, nothing in the Complaint suggests the existence of exigent circumstances. The Complaint therefore states a plausible claim.

### 3. Civil conspiracy

In Count XIV, Plaintiffs assert a claim for civil conspiracy. In order to state a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must show "that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." *Klein v. Madison*, 374 F. Supp. 3d 389, 432 (E.D.Pa. 2019) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (1979)). "Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Id.* Moreover, a claim of civil conspiracy "must be based on an existing

independent wrong or tort that would constitute a valid cause of action if committed by one actor." *Levin v. Upper Makefield Twp., Bucks Cnty., Pa.*, 90 F. Appx. 653, 667 (3d Cir. 2004). Because proof of malice is an essential element of a cause of action for civil conspiracy, it too falls under Section 8550's exception for willful misconduct. *Torres v. Allentown Police Dep't*, No. CIV.A. 13-3066, 2014 WL 4081477, at *10 (E.D.Pa. 2014).

Defendants have not challenged the adequacy of the pleading with respect to civil conspiracy. The Court therefore assumes that Plaintiffs have stated such a claim. Instead, Defendants argue only that the PTSCA bars the civil conspiracy claims. However, the facts alleged, including the use of excessive force, trespass, and malicious prosecution, all give rise to an inference of malice. Therefore, the Court will deny the motion with respect to the civil conspiracy claim.

    **4.**    **Claims under the Pennsylvania Constitution**

In Count XII, Plaintiffs assert claims arising under the Pennsylvania Constitution. "[N]o Pennsylvania statute establishes, and no Pennsylvania court has recognized a private cause of action for damages under the Pennsylvania Constitution." P*ocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) (citing *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor

appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")). Therefore, the Court will dismiss Plaintiffs' state constitutional law claims.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiffs' Supervisory Liability, *Monell*, and state constitutional law claims but denies Defendants' motion to dismiss with respect to Plaintiffs' remaining claims. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON

Dated: September 16, 2019